# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMYLIN PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ELI LILLY AND COMPANY, <br><br> Defendant. | CASE NO. 11-CV-1061 JLS (NLS) <br><br> **ORDER: (1) VACATING TEMPORARY RESTRAINING ORDER; (2) DENYING PLAINTIFF AMYLIN PHARMACEUTICALS, INC.'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> (ECF Nos. 6, 14) |

Presently before the Court is Plaintiff Amylin Pharmaceuticals, Inc.'s (Amylin) ex parte motion for temporary restraining order (TRO) and order to show cause for preliminary injunction. (Mot., ECF No. 6.) On May 25, 2011, the Court signed a TRO enjoining Defendant Eli Lilly and Company (Lilly) from engaging in certain acts regarding its promotion and sale of Boehringer Ingelheim GmbH's (BI) linagliptin product, Tradjenta, and ordered Lilly to show cause why a preliminary injunction should not issue.[1] (TRO, May 23, 2011, ECF No. 14.) After further briefing, the Court held a preliminary injunction hearing on June 2, 2011. (Minute Order, June 2, 2011, ECF No. 41.) Upon careful consideration of the written submissions and counsel's arguments, the Court **VACATES** the TRO and **DENIES** Amylin's request for a preliminary injunction.

## BACKGROUND AND LEGAL STANDARD

The Court's Order granting in part Amylin's motion for temporary restraining order set forth

---

[1] Because Amylin filed its complaint and supporting under seal, the TRO did not "issue" for purposes of Federal Rule of Civil Procedure 65 until May 25, 2011. (Order, June 6, 2011, ECF No. 42.)

the relevant factual background and applicable legal standard. (TRO 1–2.) In the interest of brevity, that Order's factual summary and legal standard are incorporated by reference here.

## ANALYSIS

The governing standard requires the Court to first determine whether Amylin will suffer irreparable harm in the absence of a preliminary injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). Under *Winter*, Amylin "must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."[2] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "'Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. . . . Accordingly, the moving party must first demonstrate that such injury is likely before other requirements for the issuance of an injunction will be considered.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (alteration in original) (quoting *Rodriguez* ex rel. *Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999)).

"[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *L.A. Memorial Colliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)); *accord Cal. Pharmacists Ass'n v. Mawell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) ("[E]conomic damages are not traditionally considered irreparable because the injury can be later remedied by a damage award."). However, intangible injuries, such as damage to goodwill, *Rent-A-Center*, 944 F.2d at 603, or loss of prospective customers, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001), may constitute irreparable harm. Here, Amylin contends that it will suffer two types of irreparable harm in the absence of a preliminary injunction against Lilly's use of a single sales force to sell Amylin's product, Byetta, and Tradjenta: (1) harm attributable to Lilly's misuse of Amylin's confidential information[3] and (2) loss

---

[2] To the extent that the TRO was premised on a presumption of irreparable harm (TRO 4), the Court repudiates that premise. *See Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009).

[3] With respect Amylin's claim for breach of the collaboration agreement's confidentiality provision (Bradbury Decl. Ex. 1, at § 6.1, ECF Nos. 6-3 to -6), Amylin concedes that primarily *misuse*—as opposed to improper disclosure—is at issue at the preliminary injunction stage (TRO Hr'g Tr. 111, ECF No. 43).

of prospective customers and goodwill. (PI Reply 9–12, ECF No. 36.)

First, Amylin has failed to establish that it will suffer any irreparable injury from any misuse of its confidential information. Although Amylin asserts that Lilly's sales representatives will misuse Amylin's confidential information (*see* Mihalik Decl. ¶ 27, ECF No. 6-2; Bradbury Decl. ¶ 81), this assertion is entirely the product of speculation on Amylin's part. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Carribean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Further, as explained below, that federal law prohibits Lilly's sales representatives from falsely describing Byetta undercuts Amylin's assertion that they would misuse Amylin's confidential information to do so. And in any event, any losses attributable to Lilly's misuse of Amylin's confidential information—as distinguished from actual disclosure—are fully compensable in damages. *See Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118–19 (2d Cir. 2009) ("Where a [trade secret] misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of value—in pursuit of profit . . . an award of damages will often provide a complete remedy for such an injury.").

Second, Amylin has failed to show that a loss of prospective customers and goodwill is likely to occur absent a preliminary injunction. This is because pertinent Food and Drug Administration regulations prohibit Lilly's sales representatives from making any statement regarding Byetta without adequate supporting data, including comparative statements between Byetta and Tradjenta. (*See* Drezin Decl. ¶¶ 13–20, ECF No. 11-1; Conterno Decl. ¶ 12, ECF No. 11-6.) Contrary to Amylin's assertion, Lilly's sales representatives cannot "tell[] customers not to use Byetta until exhausting oral treatments" or disparage Byetta without violating federal law. (TRO Reply 9, ECF No. 34; *see also* Mihalik Decl. ¶ 31 ("Lilly will . . . irreparably harm sales of exenatide by falsely asserting that exenatide is situated toward the end of the continuum of care . . . ."); Bradbury Decl. ¶ 78 ("By invoking a so-called 'injection barrier' . . . Lilly is falsely describing the nature, characteristics and attributes of exenatide. These false descriptions will irreparably harm Amylin's reputation, sales and goodwill."); Mahmood Decl. ¶ 38, ECF Nos. 6-10 to -12 ("Lilly now proposes to market Byetta as a 'third line' treatment to be used only after oral treatments, such as Tradjenta, have been exhausted.").) Amylin has offered no concrete evidence that Lilly's sales representatives would risk

FDA sanctions to maximize sales of Tradjenta. Thus, the Court cannot conclude that Amylin is likely to lose prospective customers and goodwill simply because Lilly's sales representatives will sell Byetta and Tradjenta from the "same bag."

Finally, Amylin has failed to show that money damages would not suffice to remedy any potential harm. As Lilly's economic expert explains:

> To the extent that Amylin would suffer from the alleged actions, the resulting loss would take the form of profits on lost exenatide sales. Losses of this nature are generally calculable through the use of standard economic analyses undertaken in the calculation of economic harm generally and, specifically, in antitrust actions. This is true both for any Byetta sales and profits as well as any Bydureon-related losses.[4]

(Addanki Decl. ¶ 34, ECF No. 11-3.) Although Plaintiff cites several cases holding that "'intangible injuries, such as damage to goodwill, *can* constitute irreparable harm'" (PI Reply 11 (emphasis added) (citing *Ticketmaster LLC v. RMG Techs, Inc.*, 507 F. Supp. 2d 1096, 1115 (C.D. Cal. 2007)), neither Plaintiff nor Plaintiff's economic expert points to any evidence that seriously refutes Dr. Addanki's conclusion that, in this case, any potential harm is quantifiable. (*See generally* Dick Decl., ECF No. 6-7.) The Court has no reason to doubt the veracity of this conclusion.

Amylin has failed to make the requisite "clear showing" that it is entitled to preliminary injunctive relief. *Winter*, 129 S. Ct. at 376. Because Amylin has failed to show that it is likely to suffer irreparable harm in the absence of preliminary relief, the Court need not address the remaining elements of the preliminary injunction standard. *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

## CONCLUSION

For the reasons stated, Amylin's motion for a preliminary injunction is **DENIED**. The TRO issued on May 25, 2011 is **HEREBY VACATED**.

**IT IS SO ORDERED.**

DATED: June 8, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge

---

[4] That treble damages are available for Amylin's antitrust claim bolsters the conclusion that money damages would remedy any potential harm to Amylin. *See* 15 U.S.C. § 15.